**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

JAMES BUSH,   CASE NO. 00-6224-CIV-DIMITROULEAS
              MAGISTRATE JUDGE JOHNSON

    Plaintiff

v.

THE WHITING-TURNER
CONTRACTING CO.,
a Maryland corporation,

    Defendant
_____ /



**PLAINTIFF'S STATEMENT OF
MATERIAL FACTS FOR WHICH THERE IS A
GENUINE ISSUE TO BE TRIED**

Pursuant to Local Rule 7.5, Plaintiff JAMES BUSH files his Statement of Material Facts for Which There is a Genuine Issue to Be Tried in support of his Opposition to Defendant's Motion for Summary Judgment.

**STATEMENT OF DISPUTED MATERIAL FACTS**

1. Whether James Bush ["Bush"] was promoted by Whiting-Turner Contracting Company ["Whiting Turner"] to the position of Assistant Superintendent in October, 1997.

2. Whether Whiting Turner held Bush out to the public as an Assistant Superintendent in October, 1997.

3. Whether Bush was qualified to perform the job of assistant superintendent.

4. Whether Bush was ever disciplined or reprimanded for the mistakes Whiting-



Turner alleges he made while employed as an Assistant Superintendent.

5. Whether Whiting Turner or any of its agents or employees ever told Bush at the time they hired him that there was a training period for assistant superintendents before they became assistant superintendents.

6. Whether Whiting Turner or any of its agents or employees ever told Bush at the time they hired him that there were two tiers of assistant superintendents.

7. Whether Charles Bender demonstrated performance problems during the time Bush was employed as an Assistant Superintendent with Whiting Turner

8. Whether Bender was ever disciplined or reprimanded for any performance problems he had while working as an Assistant Superintendent.

9. Whether Eric Plotke reprimanded or counselled other employees about their performance problems.

10. Whether Doug Houghton was ever reprimanded of counselled about his performance problems.

11. Whether Bush and Bender received equal treatment while they were employed as assistant superintendents at Whiting Turner.

12. Whether Whiting Turner had a policy which required it to review all minority supervisors on an annual basis, and if so, whether Whiting Turner adhered to its policy.

13. Whether James Bush was treated differently by Whiting Turner from other non-minority assistant superintendents.

14. Whether James Bush was the only black assistant superintendent employed with

2

        Whiting Turner in the state of Florida during the time he worked as an assistant superintendent at Whiting Turner.

15. Whether Whiting Turner recruited black engineers as part of its college recruitment effort at the time Bush worked there.

16. Whether Bush adequately performed the paperwork tasks required of him as an assistant superintendent.

17. Whether Bush was entitled as a union benefits employee to overtime pay pursuant to his collective bargaining agreement while working as an assistant superintendent for Whiting Turner

18. Whether Bush was told at the time he was hired that there were two categories of assistant superintendents — assistant superintendent, UB and assistant superintendent, CB.

19. Whether Bush was promised at the time he was hired that he would be reviewed in six months.

20. Whether Bush was told at the time he was hired as an assistant superintendent by Whiting Turner that he was an assistant superintendent trainee, rather than an assistant superintendent.

21. Whether Bush worked as an assistant superintendent during the period from October, 1997 to March, 1998.

22. Whether Bush was paid the salary of an assistant superintendent during the period from October, 1997 to March, 1998.

23. Whether the position of assistant superintendent was normally reserved for

3

carpenters.

24. Whether Whiting Turner only employs carpenters as assistant superintendents.

25. Whether Bush had supervisory responsibility and performed the job of a managerial employee.

26. Whether Whiting Turner has a formal policy distinguishing between assistant superintendent, UB and assistant superintendent, CB

27. Whether Eric Plotke had the ability to make Bush an assistant superintendent.

28. Whether Eric Plotke represented to Bush that he was an assistant superintendent in October, 1997.

29. Whether Bush had little to do during the first few months of the Sawgrass project.

30. Whether the salaries of Bush and Bender were determined exclusively by the collective bargaining agreements.

31. Whether Bender possessed a higher level of skill than Bush at the time each was hired.

32. Whether Bush had performance problems while working as an assistant superintendent.

33. Whether Bender had performance problems prior to the time he was reviewed in September, 1998.

34. Whether Bush had performance problems that exceeded those of Bender.

35. Whether Bush was responsible for a problem with concrete footings which were improperly poured by Camco, the project's subcontractor.

36. Whether there was any problem with the placement of anchor bolts on any of

4

Bush's buildings.

37. Whether Bush improperly planted trees on his site..

38. Whether Bush was able to, and had experience, shooting elevations, reading blueprints, doing layouts, and using tools used by an assistant superintendent.

39. Whether Bush corrected field problems when they were identified.

40. Whether Bush made a mistake shooting elevations on one of his buildings.

41. Whether Bush had a bad attitude.

42. Whether Bush was able to motivate his workers and have them work as a team.

43. Whether Bush approached anyone at Whiting-Turner for a review.

44. Whether the decision not to photograph Bush with the other supervisors of the Sawgrass project was due, in whole or in part, to his race.

45. Whether the decision to ask Bush to leave the EEO training was due, in whole or in part, to his race.

46. Whether the anonymous document left on Bush's desk referring to discrimination in January, 1999 was left there in whole or in part because of his race.

Respectfully submitted,

DAVID H. POLLACK, ESQ.
Attorney for Plaintiff
The Ingraham Building
25 S.E. 2nd Avenue   Suite 1020
Miami, FL   33131

BY: _____

DAVID H. POLLACK
Fla. Bar No. 0955840

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this ___ day of March, 2000 to: Sheila Cesarano, Esq., 201 S. Biscayne Blvd., 1500 Miami Center, Miami, FL 33131.

BY: _____

DAVID H. POLLACK

Fla. Bar No. 0955840