**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 00-6224-CIV-DIMITROULEAS/JOHNSON



JAMES BUSH,

        Plaintiff,

v.

THE WHITING-TURNER
CONTRACTING CO., a
Maryland corporation,

        Defendant.
_____/

### DEFENDANT'S REPLY TO
### PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendant, **THE WHITING-TURNER CONTRACTING CO.** ("Whiting-Turner"), replies to Plaintiff **JAMES BUSH's** ("Plaintiff") Response to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (the "Response").

### I.   PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE.

#### A.   Plaintiff Has Not Established That He Was Qualified For The Position.

Plaintiff argues that he was qualified for the union-benefits assistant superintendent position ("assistant superintendent-UB") because he had "over 33 years of experience in the construction industry," a former employer believes that Plaintiff was a good laborer foreman, and two co-workers who Plaintiff supervised believe that he was a good supervisor. (Response at 11-12.) Plaintiff is wrong for three reasons.

***First,*** Plaintiff cannot establish that he was qualified for the assistant superintendent-UB position simply because he worked ***in a different position*** in the construction industry for many years. Past performance as a laborer foreman does not equate to successful performance as an assistant superintendent. See Durham v. Xerox Corp., 18 F.3d 836, 840 (10th Cir. 1994) ("Mere seniority does not support a finding that [the plaintiff] was more qualified for a different job."). For example, an orchestra's cellist is not qualified to become an orchestra director simply because he has played in different orchestras for thirty years.

***Second,*** former employer Robert Murray's opinion about Plaintiff's performance as laborer foreman four years before Whiting-Turner hired Plaintiff is irrelevant. Mr. Murray did not work



with Plaintiff at Whiting-Turner or while Plaintiff was an assistant superintendent; rather, Mr. Murray solely worked with Plaintiff from 1984 until 1993 – over 4 years before Plaintiff joined Whiting-Turner – and while Plaintiff solely was a laborer foreman. (Murray Aff., ¶¶ 3-4.) Mr. Murray's affidavit cannot refute Whiting-Turner's defenses because Mr. Murray lacks personal knowledge of Plaintiff's performance and skills as an assistant superintendent-UB. See Fed. R. Civ. P. 56(e) (requires that summary judgment affidavits be made "on personal knowledge" and "set forth such facts as would be admissible in evidence").

Moreover, Mr. Murray's "affidavit" is particularly troubling in that it was apparently ***not sworn to by Mr. Murray, but rather Plaintiff himself swears to the affidavit.*** (Murray Aff., Notary Paragraph.) According to the alleged "affidavit," Plaintiff is the person who appears before the notary public and swears to the information contained in Mr. Murray's statement. Id. Thus, Mr. Murray's "affidavit" is neither sworn by Mr. Murray nor an affidavit, and, consequently, improper summary judgment evidence. See Fed. R. Civ. P. 56(e).

***Third,*** Andrew Delancy's and Jacques Marcelin's opinions that Plaintiff was a good supervisor cannot support Plaintiff's claim that he was qualified since they did not supervise Plaintiff's work. See Hester v. BIC Corp., __ F. 3d __, 2000 WL 1299592 (2d Cir. Sep. 14, 2000) (finding that opinion testimony of co-workers was irrelevant because none were involved in the decision-making process or had any basis of knowing whether plaintiff was adequately performing her duties). The Court should note that Mr. Marcelin was terminated by Plotke. (Ex. 1, Plotke Supp. Aff., ¶ 3.) As one court stated, Plaintiff's co-worker's comments are irrelevant. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). In this case, Plotke – the person who hired Plaintiff – believed that Plaintiff's performance as assistant superintendent was poor. Plaintiff has not presented any evidence that Plotke's perception was discriminatory. To the contrary, Plaintiff adamantly testified that Plotke was not a racist. (Plaintiff Dep. (I) at 145, 147.)

Interestingly, Plaintiff completely fails to address the numerous points raised in the Summary Judgment Motion evidencing his poor performance. The reason is obvious: Plaintiff cannot explain away his errors. Because Plaintiff has not established that he was qualified for the assistant superintendent position, the Court should grant summary judgment.

**B.    Plaintiff Utterly Ignores Doug Houghton, His Comparator.**

Plaintiff's Response completely ignores and does not even mention Doug Houghton, the white assistant superintendent-UB whom Plaintiff replaced. (See Response at 12-13.) Both Houghton and Plaintiff were unable to become assistant superintendents-CB because of their

2

performance problems. Even then, Plaintiff received *better* treatment than Houghton because *Houghton was terminated,* while Plaintiff was not.

Plaintiff has chosen to deliberately ignore Houghton's existence in the hopes that the Court will somehow also do so. Because Whiting-Turner has presented a similarly situated white assistant superintendent who was treated *less* favorably, Plaintiff's case fails.

Instead of discussing Houghton, Plaintiff continues to use Bender as his comparator. Plaintiff claims that Bender is similarly situated because he had "performance problems" as allegedly testified to by Plotke and Bender. (Response at 13.) However, Plotke never testified that Bender had performance problems. In fact, the cite in Plaintiff's Response to page 82 of Plotke's deposition does not support this conclusion. Rather, Plotke stated that Bender came into his office (on his own volition and without Plotke summoning him) to discuss a conflict with Plotke. (Plotke Dep. at 82). Plaintiff also misstates that Bender testified on page 124 of his deposition that Mitchell reprimanded him. (Response at 13.) Bender testified to the opposite: that Mitchell never reprimanded him (Bender Dep. at 124-25.) Bender's deposition simply states that Bender was reprimanded by Plotke "a couple of times" for making mistakes. (Bender Dep. at 125.) Nonetheless, a "couple of mistakes" are not synonymous with performance problems. Clearly, Plaintiff has not presented an iota of evidence demonstrating that Bender and he were similarly situated since Bender did not have performance problems.

In addition, Bender is not similarly situated to Plaintiff because Bender was a carpenter foreman, and had more skills than Plaintiff. Plaintiff has not identified a single non-Black assistant superintendent who was a laborer foreman, became an assistant superintendent-UB, and was promoted to an assistant superintendent-CB. See McKenzie Corp. v. EAP Management Corp., 40 F. Supp. 2d 1369, 1375 (S.D. Fla. 1999) (where Judge Dimitrouleas found that the plaintiff could not show that similarly situated non-minority employees were treated more favorably).

Plaintiff has not presented any evidence that Bender – and not Houghton – is the proper comparator. As this Court (Judge Ryskamp) recently stated:

> It is fundamental that in order to compare the discrimination experienced by plaintiff to that of other employees outside his protected category, "the plaintiff must show that he and the employees are similarly situated in all relevant aspects." Courts have found that to be "similarly situated," the individuals with whom plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, and *(3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. . . . . Finally, "it is necessary to*

3

> *consider whether the employees are involved or accused of the same of similar conduct and are disciplined in different ways."*

Sanguinetti v. United Parcel Services, Inc., 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000) (citations omitted and emphasis added). Since Plaintiff did not show that non-Black similarly situated employees were treated more favorably, or that Bender had similar performance problems, Plaintiff's case cannot succeed. Thus, the Court should grant summary judgment on Plaintiff's race claims.

## II.  PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE OF PRETEXT.

### A.  Pretext Is Not Established Simply Because Plaintiff Was Allegedly Not Reprimanded Or Disciplined.

Plaintiff argues that Whiting-Turner's legitimate nondiscriminatory reasons are pretextual because, "Conspicuously absent from Whiting-Turner's extensive discussions of Bush's problems ... is any indication that Bush was ever disciplined or counseled." (Response at 13.) Plaintiff also argues that Whiting-Turner's reasons are pretextual because Messrs. Murray, Delancy, and Marcelin believe that he did his job well. Id. at 14-15. Plaintiff is wrong for seven reasons.

*First,* Plaintiff did not receive any written reprimands from Plotke because Plotke never gave written reprimands to the assistant superintendents-UB he supervised. (Ex. 1, Plotke Supp. Aff, ¶ 4.) Plaintiff, Houghton, and Bender did not receive any written reprimands from Plotke or anyone else. Id. In fact, the only adverse action Plotke took as to any of these three individuals was recommending Houghton's termination for performance problems. Id.

*Second,* the pay differential between Plaintiff and Bender has absolutely nothing to do with disciplining or reprimanding Plaintiff. Rather, the additional $1.80 paid to Bender as an assistant superintendent-UB resulted from the higher pay that carpenter foremen receive ($16.10) over laborer foremen ($9.82) under their different union contracts. After the project fully started, Plaintiff received a 60% wage increase (from the laborer foreman's salary), while Bender was given a 7% wage increase (from the carpenter foreman's salary). (Ex. A to Motion, Plotke Aff., ¶ 31.) Interestingly, Plaintiff's Response is silent on this pay differential caused by the union contracts.

*Third,* whether two employees who Plaintiff supervised believe that Plaintiff's performance was good does not raise pretext. Whatever Plaintiff and his co-workers consider are the reasons why Plaintiff was not disciplined is irrelevant. It is the perception of the decision maker which is relevant to the Court's determination, not Plaintiff's perception of himself or his co-worker's perception of Plaintiff. Webb v. R&B Holding Co., 992 F. Supp. 1382, 1387 (S.D. Fla. 1998). In this case, Plaintiff has repeatedly testified that Plotke was not a racist. (Plaintiff Dep. (I) at 145, 147.)

4

***Fourth,*** Plaintiff cannot establish that Whiting-Turner's reasons are pretextual simply because former employer Murray thought highly of Plaintiff's performance as a laborer foreman. Relying on past evaluations by a former employer about Plaintiff's performance in a different position does not establish pretext. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999). Morever, Mr. Murray's "affidavit" clarifies that Plaintiff was not performing the job or duties of an assistant superintendent, since Plaintiff was "*assisting* the carpenters on the job, *helping* with the layout of the buildings, *doing rough work, assisting* in the shooting of elevations, and *laying concrete.*" (Murray Aff., ¶ 4) (emphasis added). According to Mr. Murray's "affidavit," Plaintiff was *not* responsible for doing the building's layout or shooting elevations; rather, he always assisted someone else with these responsibilities. Id.

***Fifth,*** Plaintiff's attempt to have the Court or a jury decide whether Plaintiff knew the technical aspects of his job so as to establish pretext is inappropriate. (Response at 15.) As the Eleventh Circuit stated in a recent *en banc* opinion:

A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). In the instant case, Plaintiff has failed to address the reasons set forth by Whiting-Turner.

***Sixth,*** Plaintiff's failure to receive a written warning or reprimands does not constitute an adverse job action. See Simmons v. Neumann, 13 Fla. L. Weekly Fed. D121, D126 (S.D. Fla. Nov. 5, 1999) ("Initially, a negative performance which is not used as the basis for any action against plaintiff does not constitute an adverse job action."); Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999) (same); Smart v. Ball State Univ., 89 F.3d 437, 442-43 (7th Cir. 1996) (same). As this Court held, "Stated another way, if all employee evaluations were poorly done and unsupported, it might be a poor way to run the Sheriff's office, but it would not be actionable under Title VII." Simmons, 13 Fla. L. Weekly Fed. at D126. The fact that Plaintiff was not reprimanded or disciplined had no significant effect on Plaintiff's employment. Plaintiff suffered no material harm by *not* being disciplined or reprimanded, and the mere fact that Plaintiff is somehow unhappy that he was *not* reprimanded is not an actionable adverse action. Smart, 89 F.3d at 441("not everything that makes an employee unhappy is an actionable adverse action.").

5

***Seventh,*** Plotke testified that he repeatedly discussed Plaintiff's performance problems with Plaintiff. (Plotke Dep. at 36, 54-55, 59-60.) Plaintiff's unsubstantiated conclusions that "Whiting-Turner has failed to come forward with any explanation" why he was not disciplined, (Response at 14), and that "Plotke never confronted [Plaintiff]," (Id. at 18), are untrue.

The Eleventh Circuit recently stated that, "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race]." Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000); see Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000). Plaintiff may not establish that Whiting-Turner's proffered reasons are pretextual merely by questioning the wisdom of the employer's reasons. Id.; Combs, 106 F.3d at 1543. In this case, even the EEOC has determined that Plaintiff lacks a race discrimination claim. (Ex. 2, EEOC Determination Letter.) Accordingly, the Court should find that Plaintiff failed to establish pretext.

## B.   Plaintiff Cites Inapplicable Cases And Misconstrues The Decisions.

The cases cited by Plaintiff to support his pretext argument are distinguishable. In Torre v. Casio, 42 F.3d 825 (3d Cir. 1994), the plaintiff was terminated allegedly as part of a reduction in force. Id. at 827-28. The plaintiff sued alleging age discrimination under the ADEA, and the trial court granted the employer's motion for summary judgment. The Third Circuit reversed for several reasons. First, the Third Circuit found that the trial court had failed to consider that similarly situated younger people were retained and not terminated. Id. at 831-32. Second, the Third Circuit held that the trial court had used the wrong legal standard in determining pretext, since the Third Circuit had recently changed the standard. Id. at 832. Third, the Third Circuit found that the trial court had failed to consider disputed evidence such as deposition testimony indicating that a different person had made the decision to terminate the plaintiff, and that this different decisionmaker had made discriminatory comments about the plaintiff's replacement such as that the candidate "was unacceptable because he was too old, and that he did not want to fill [the plaintiff's] position with anyone who was over age 35." Id. at 834. In addition, this new decisionmaker also made comments to the plaintiff such as, "Did you forget or are you getting too old, you senile bastard?" Id.

Clearly, Torre is completely inapplicable to the instant case. Unlike the plaintiff in Torre, Plaintiff was not terminated; was not qualified for the position; has not addressed why similarly situated, non-Black individuals were treated like (or less favorably than) him; and there is no direct evidence of discrimination -- e.g., comments by the decisionmaker.

Plaintiff also cites to Vaughn v. Edel, 918 F.2d 517 (5th Cir. 1990). In Vaughn, the plaintiff,

6

an African-American, was terminated because she was one of the two worst performers. Unlike other employees who were reprimanded for performance problems and placed on action plans, the employer had chosen not to reprimand the plaintiff for fears that she would sue under Title VII. Id. at 521-22. Apparently, the employer had learned that the plaintiff had contacted a lawyer when she previously received a memorandum stating that the employer "had become aware for some time of the excessive visiting by predominantly blacks in her office behind closed doors," and that the plaintiff "was allowing herself to become a black matriarch ... and that this role was preventing her from doing her primary work for the Company and that it must stop." Id. at 519. Thus, the employer deliberately chose not to inform the plaintiff of her poor performance because of her race and, when it had to terminate the worst performers, terminated the plaintiff even though her evaluations did not reflect such poor performance. The Fifth Circuit found that the employer had discriminated against the plaintiff since she was treated differently because of her race.

Vaughn is completely inapplicable to the instant case. Unlike the plaintiff in Vaughn, Plaintiff was not terminated. Moreover, the employer in Vaughn had taken its actions *because of* the plaintiff's race. In the instant case, Plaintiff has not presented any evidence that Whiting-Turner failed to reprimand him because of his race. In fact, the evidence shows that Plotke did not give any written reprimands to the other assistant superintendents.

### C. Plaintiff's "Evidence" Of Pretext Is Simply His Speculation.

Plaintiff's "evidence" that Whiting-Turner discriminated against him is simply his speculation. Plaintiff's subjective opinion or speculation that Whiting-Turner's actions were discriminatory, without supportive evidence, is insufficient to establish pretext and avoid summary judgment. Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). See cases cited in pages -- to --- of the Summary Judgment Motion. Just because Plaintiff believes that he was not promoted because of his race does not establish that his failure to attain the desired promotion was racially motivated. Coutu v. Martin Bd. Of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995). Moreover, *"an employee's own opinions about his ... qualifications [do not] give rise to a material factual dispute."* Lee, 226 F.3d at 1254 (the Eleventh Circuit citing Simms v. Oklahoma ex rel. Department of Mental Health, 165 F.3d 1321, 1290-30 (10th Cir. 1999)). Accordingly, the Court should find that Plaintiff has failed to establish pretext.

### III. PLAINTIFF HAS FAILED TO ESTABLISH ANY DISCRIMINATORY ANIMUS.

Plaintiff's Response alleges that Whiting-Turner incorrectly argues discriminatory animus. According to the Response, the U.S. Supreme Court in Int'l Union v. Johnson Controls, 499 U.S.

7

187 (1991), purportedly established that an employer's lack of animus does not shield it from a finding of intentional discrimination. (Response at 19.) Plaintiff is wrong.

In Int'l Union v. Johnson Controls, the Supreme Court never even addressed whether animus is required to prove intentional discrimination. In stark contrast, the Supreme Court has established that a plaintiff asserting a Title VII disparate treatment claim must prove the defendant's discriminatory animus. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McDonnell Douglas, 411 U.S. at 804-05.

Moreover, the Eleventh Circuit contradicts Plaintiff's misinterpretation of the law because it has explicitly held that to prove intentional discrimination under Title VII, an employee must establish that the employer's discriminatory animus towards him/her was based on the employee's protected characteristic. Stimson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999); Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236 (11th Cir. 1998); Edwards v. Wallace Community College, 49 F.3d 1517 (11th Cir. 1995). Clearly, Plaintiff *must* establish that Whiting-Turner bore discriminatory animus against him, and based on the facts of the instant case, Plaintiff cannot meet this threshold and cannot prevail in proving intentional discrimination.

In addition, and like the above sections, Plaintiff utterly fails to address the facts set forth on pages 14 to 18 of its Summary Judgment Motion evidencing that Whiting-Turner lacks discriminatory animus. The reason is obvious: Plaintiff cannot refute the evidence. Accordingly, the Court should find that Plaintiff has failed to establish any discriminatory animus by Whiting-Turner.

### IV.  PLAINTIFF LACKS A CLAIM UNDER § 448.08, FLA. STAT.

In the Response, Plaintiff argues that one of his "core claims" are unpaid wages, and that these are not merely an element of damages. (Response at 20-21.) However, Plaintiff's entire Response concentrates on his race claim and not on unpaid wages.

Plaintiff also argues that Munsey v. General Telephone Co. of Florida, 538 So. 2d 1328 (Fla. 2d DCA 1989), is inapplicable. (Response at 20-21.) Whiting-Turner disagrees with Plaintiff's interpretation of Munsey and, instead of repeating the arguments previously made in pages 18 to 20 of the Summary Judgment Motion, refers the Court to the cited portion.

Moreover, Plaintiff's Response fails to address the arguments made by Whiting-Turner as to § 448.08, Fla. Stat. Accordingly, the Court should grant summary judgment.

### V.  PLAINTIFF MISSTATES FACTS IN HIS RESPONSE.

Plaintiff's Response has numerous misstatements of facts. Due to page limitations, Whiting-

8

Turner will only address the most egregious misstatements:

- Plaintiff erroneously states that Whiting-Turner's EEOC statement requires it to "conduct an annual review of all minority supervisors." (Response at 4, citing Ex. E to Response, EEOC Statement.) However, the EEOC statement does not make this allegation.

- Plaintiff alleges that he received an award "for his performance from Whiting-Turner one month prior to the time he left." (Response at 5, 12.) The award was given to employees who "effectively and diligently applied [Whiting-Turner's] Quality Control Program on their projects." (Quality Awards Memorandum.) However, the award was not given to Plaintiff one month before he resigned, but as the Exhibit shows, given for the April-June 1998 period, which is 9 months before Plaintiff's resignation.

- Moreover, Plaintiff received the award because Plotke recommended to Whiting-Turner's Vice President, Robert H. Mitchell, that Plaintiff's name be presented to corporate headquarters for the award, and, pursuant to Plotke's recommendation, Mitchell presented Plaintiff's name. (Ex. A, Plotke Supp. Aff., ¶ 2.) Plotke recommended Plaintiff for the award because he felt that Plaintiff was making an attempt to improve and comply with the Quality Control Program and his use of checklists, as well as it would be a way to motivate Plaintiff's performance. Id.

- Without providing any cite in support, Plaintiff erroneously states that, "Plotke was at a loss to explain how [Plaintiff] received an award from Whiting-Turner one month before his departure. . . ." (Response at 6.) However, Plaintiff has fabricated this allegation since Plotke never made this statement and even the dates are wrong.

- According to Plaintiff, Plotke testified that Plaintiff had a "bad attitude" and that he "never made any attempt to discuss the problem with [Plaintiff] even though it had an effect on morale." (Response at 6, citing Plotke Dep. at 72, 82-83). Rather, Plotke testified that Plaintiff developed a bad attitude and he approached Plaintiff a couple of times about Plaintiff's attitude: "Never one time [had Plaintiff] expressed any displeasure verbally. He walked around like there was a big gray cloud over his head a lot, and I asked him about that a couple of times and I said, you know, we have to work on your attitude. I don't have a bad attitude. Clearly he did. But he would not elaborate." (Plotke Dep. at 72); see also id. at 84 (testifying about approaching Plaintiff regarding Plaintiff's "bad attitude").

- What is truly misleading about Plaintiff's "bad attitude" argument is that Plaintiff disingenuously extracts Plotke's testimony on a separate matter, completely out of context, to support his allegation that Plotke "never made any attempt to discuss the problem" with Plaintiff. (Response at 6.) Plaintiff specifically cites testimony from pages 82-83 of Plotke's deposition to support his "bad attitude" argument. Id. However, pages 82-83 actually refer to a rude comment made by Plaintiff about Plotke:

    > One thing occurred one afternoon that really bothered me. On an afternoon that I had offered him to go with us to a basketball game or something, he declined, graciously declined. And a few minutes later, I came walking around the corner and he was talking to one of the secretaries and I overheard him, as I was coming down the hallway, say, can you believe those guys would ask me to go to whatever it was with

9

them? I don't want to spend any time with those guys. And you know it startled me. It shocked me. I didn't question him about it. (Plotke Dep. at 78-79.)

- Plaintiff states that, "Plotke acknowledged that he never made a record of any of the problems he experienced with [Plaintiff], even though he did with other employees." (Response at 7, citing Plotke Dep. at 92.) However, Plotke never made this statement, but simply stated on page 92 that he did not keep a personnel file on Plaintiff. Whiting-Turner does not keep personnel files on union members. (Ex. 1, Plotke Supp. Aff., ¶ 5.)

- According to Plaintiff, Whiting-Turner cannot explain why Bender was promoted because he also made mistakes on the job. (Response at 7, citing Plotke Dep. at 38.) Plaintiff has taken Plotke's testimony out of context. On page 38, Plotke stated that all employees – including himself – made mistakes: "Everybody makes mistakes, and I was willing to, you know, continue to give [Plaintiff] an opportunity to do well." (Plotke Dep. at 38.) When asked whether Bender made mistakes, Plotke responded, "Yes. I make mistakes." Id.

- Plaintiff incorrectly states that Plotke found it "odd" that Plaintiff was not invited to Mitchell's Christmas Party. (Response at 8, citing Plotke Dep. at 77.) However, Plotke testified that he did *not* find it odd that Plaintiff was not invited since the party was for Whiting-Turner management and not union members. (Plotke Dep. at 77-78.) In addition, other African-Americans (and minorities) who are Whiting-Turner employees were invited and attended the party at Mitchell's house. (Ex. 1(A), Statements provided to the EEOC from Omar McFarlane-Sweeney, Shamia Blanchett, Noreen Niamath, and Sergio Tio.)

Finally, Plaintiff raises – for the very first time – a claim of disparate impact alleging that Whiting-Turner "has a practice of excluding blacks from management positions." (Response at 8.) The Court should ignore this eleventh hour claim for two reasons. First, the disparate impact claim is not plead in the complaint. Fed. R. Civ. P. 8. Second, Plaintiff offers no evidence to support this allegation. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1273-75 (11th Cir. 2000). Instead, Plaintiff alleges that Plotke testified that he was the only black assistant superintendent in Florida. (Response at 8, citing Plotke Dep. at 98.) Not surprisingly, page 98 does not support this uncorroborated allegation. Once again, Plaintiff attempts to fabricate a claim just like his vanished ADEA claim. Plaintiff's disparate impact claim should fail in the same fashion that his ADEA claim faded in the Response.

## CONCLUSION

Defendant, THE WHITING-TURNER CONTRACTING CO., respectfully requests that the Court enter Summary Judgment on all Counts in its favor and against Plaintiff JAMES BUSH.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 347-7386 (facsimile)

By: _____
Sheila M. Cesarano
Florida Bar Number 708364
Rene Gonzalez-LLorens
Florida Bar Number 0053790

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this ___6___ day of December 2000 to **DAVID H. POLLACK, ESQ.**, 25 S.E. 2nd Avenue, Suite 1020, The Ingraham Building, Miami, Florida 33131.

_____
OF COUNSEL

MIADOCS 382362 1 RGL

11

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6224-CIV-DIMITROULEAS/JOHNSON

JAMES BUSH,

       Plaintiff,

v.

THE WHITING-TURNER
CONTRACTING CO., a
Maryland corporation,

       Defendant.
_____/

## SUPPLEMENTAL AFFIDAVIT OF ERIC PLOTKE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA     )
                               ) ss:
COUNTY OF PALM BEACH  )

     I, **ERIC PLOTKE**, state:

     1.  I am over eighteen years of age and make this Supplemental Affidavit based upon my own personal knowledge and a review of the records kept and maintained by Defendant, THE WHITING-TURNER CONTRACTING CO. ("Whiting-Turner"). I have full authority to make this Affidavit.

     2.  Plaintiff, JAMES BUSH ("Plaintiff"), received a Quality Award during the April-June 1998 period. Plaintiff received the award because I recommended to Whiting-Turner's Vice President, Robert H. Mitchell, that Plaintiff's name be presented to corporate headquarters for the award, and, pursuant to my recommendation, Mitchell presented Plaintiff's name. I recommended Plaintiff for the award because I felt that Plaintiff was making an attempt to improve and comply with the Quality Control Program and his use of checklists, as well as it would be a way to motivate Plaintiff's performance.

     3.  I am also familiar with Jacques Marcelin, a laborer who was brought to work on Whiting-Turner's Bloomingdale's project by Plaintiff. I terminated Mr. Marcelin because, on numerous occasions, I observed that Mr. Marcelin was routinely standing around and not working.

4. Plaintiff did not receive any written reprimands from me because I never gave written reprimands to the assistant superintendents-UB I supervised. Plaintiff, Houghton, and Bender did not receive any written reprimands from me. In fact, the only adverse action I took as to any of these three individuals was recommending Houghton's termination for performance problems.

5. Neither I nor Whiting-Turner kept a personnel file on Plaintiff or Bender (when he was a union member), because Whiting-Turner does not keep personnel files on union members.

6. Attached as Exhibit "A" to this affidavit are statements provided to the EEOC from Omar McFarlane-Sweeney, Shamia Blanchett, Noreen Niamath, and Sergio Tio.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _____ day of December 2000.

_____
ERIC PLOTKE

M:ADOCS 304107 1 RGL

2

# THE WHITING-TURNER CONTRACTING CO.
## SAWGRASS MILLS MALL
## PHASE III EXPANSION

# AFFIDAVIT

TO:        Whom it may concern

FROM:   Omar McFarlane-Sweeney

DATE:    05/10/1999

SUBJECT: Employment

CC:

---

Let this serve as confirmation that I have been employed to The Whiting-Turner Contracting Co. since January of 1996 as Project Engineer. I am a minority of African-Asian decent and employed as a salaried "exempt" employee with full benefits. I also want to confirm that I was invited to and attended the Company's Christmas party on December 11, 1998 at Rob Mitchell's House.

Omar H. McFarlane-Sweeney



EEOC/BUSH 080

Ms. Shamia N. Blanchett
3941 N. W. 36th Terrace
Lauderdale Lakes, FL 33309

(954) 858-9991
(954) 858-1406

May 10, 1999

To Whom It May Concern:

I have been employed full time with The Whiting-Turner Contracting Company since January 19, 1998. I serve as the Office Manager on the Sawgrass Phase III Expansion project. I am an African American female.

In December of 1998, I was invited to and attended a Christmas party hosted by Mr. Robert Mitchell at his home.

Yours truly,

*[signature: Shamia N. Blanchett]*

Shamia N. Blanchett

EEOC/BUSH 081

Ms. Noreen Niamath
2800 NW 56TH Avenue, B203
Lauderhill, FL 33313

May 10, 1999

To Whom It May Concern:

I have been employed with The Whiting Turner Contracting Co., as a regular full time employee since January 1, 1998. I am the Project Accountant for Sawgrass Mills Phase III. My country of origin is Trinidad and Tobago, which is in the West Indies. Ethnically I am best described as West Indian of East Indian Decent.

In December of 1998 I was invited to and I attended the Christmas party that was held at the home of Mr. Robert Mitchell.

Sincerely,

Noreen Niamath

EEOC/BUSH 082

G. W. C. WHITING
(1883-1974)

WILLARD HACKERMAN
PRESIDENT AND CEO

FOUNDED 1909

# THE WHITING-TURNER CONTRACTING COMPANY

(INCORPORATED)

ENGINEERS AND CONTRACTORS

CONSTRUCTION MANAGEMENT
GENERAL CONTRACTING
DESIGN-BUILD
SPECIALTY CONTRACTING
OFFICE/HEADQUARTERS
RETAIL/SHOPPING CENTERS
HEALTH CARE
BIO-TECH/PHARMACEUTICAL
HIGH-TECH/CLEANROOM

BURDINES CONSTRUCTION TRAILER
19503 BISCAYNE BLVD
AVENTURA, FL 33180
305-792-5553
FAX 305-792-5514

INSTITUTIONAL
DATA CENTERS
SPORTS AND ENTERTAINMENT
INDUSTRIAL
WAREHOUSE/DISTRIBUTION
MULTI-FAMILY RESIDENTIAL
ENVIRONMENTAL
BRIDGES, CONCRETE

May 10, 1999

To whom it may concern:

My name is Sergio A. Tio' and am of Cuban descent. I was hired as a Project Engineer in January 1996 by The Whiting-Turner Contracting Company. Last year, I was invited and attended a Christmas party held by Mr. Robert Mitchell.

Sincerely,

*[signature]*

Project Engineer
The Whiting-Turner Contracting Company

EEOC/BUSH 083

OFFICES    IRVINE, CA    PLEASANTON, CA    SHELTON, CT    **WT**    NEW HAVEN, CT    NEWARK, DE    FT LAUDERDALE, FL    ORLANDO, FL
ATLANTA, GA    BOSTON, MA    CLEVELAND, OH    LAS VEGAS, NV            SOMERSET, NJ    DALLAS, TX    RICHMOND, VA    WASHINGTON DC