UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6224-CIV-DIMITROULEAS

JAMES BUSH,

    Plaintiff,

vs.

THE WHITING-TURNER CONTRACTING CO.,

    Defendant.

_____/

Magistrate Judge Johnson



## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 27]. The Court has carefully considered the motion and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff's Complaint contains claims under federal and state law for race discrimination under Title VII (Count I), age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count II), race and age discrimination under the Florida Civil Rights Act ("FCRA") (Counts III and IV), and for unpaid wages under Florida Statute Section 448.08 (Count V). Plaintiff, an African American male over 50 years in age, alleges that as an assistant superintendent for Defendant construction company he was paid less than a white and younger assistant superintendent performing the same job at the same time, that he never received the six-month review and accompanying raise that others received, that he was excluded from the company Christmas policy, was excluded from promotional photos for the construction project he worked upon, and was precluded from attending an equal employment training seminar at the last minute due to a work assignment that could have been performed by someone else. Plaintiff alleges that this disparate treatment was due to Plaintiff's race and age.

Defendant disputes these allegations and states in part that Plaintiff did not have the same



qualifications as the alleged white and under 40 comparator, and thus was not paid the same for legitimate business reasons. Defendant also asserts that Plaintiff, as an assistant superintendent receiving union benefits, would not have been invited to company social gatherings. In addition, Defendant asserts that Plaintiff had performance problems, and thus it was Plaintiff who did not ask for a semi-annual review for fear of not receiving a positive performance review. Finally, as to the unpaid wages claim, Defendant argues that Plaintiff's dispute is about disparate treatment employment discrimination as to wages, and that all wages owed to Plaintiff have been paid. Defendant moved for summary judgment on all claims in the Complaint.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

2

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

## B. Burden Shifting Analysis under Title VII and ADEA[1]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. S 2000e-2(a)(1). The ADEA prohibits discrimination in employment based

---

[1] Claims for race discrimination under the FCRA are treated under the same legal standard as the federal Title VII claims, and age discrimination claims are treated under the same legal standard as federal ADEA claims. The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. Harper v. Blockbuster Entertainment Corporation, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So.2d 1005, 1009 (Fla.1989); Florida State Univ. v. Sondel, 685 So.2d 923, 925 n. 1 (Fla. 1st Dist.Ct.App.1996); Kelly v. K.D. Construction of Fla., Inc., 866 F.Supp. 1406, 1411 (S.D.Fla.1994)).

3

upon a person's age being over 40 years of age. 29 U.S.C. § 623(a)(1). A plaintiff may establish a prima facie case of discrimination under either statute by "circumstantial evidence to prove discriminatory intent, using the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)." Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir.1997) (citations omitted).

Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of race discrimination under Title VII or age discrimination under the ADEA by showing: (1) the plaintiff belongs to a racial minority or is a member of a protected age group; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees of other races or younger employees more favorably; and (4) he was qualified to do the job. Holifield, 115 F.3d at 1562; see also McDonnell Douglas, 411 U.S. at 802; Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (ADEA case). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562 (citations omitted).

If a prima facie case is shown, the defendant must "articulate a legitimate, non-discriminatory reason for the challenged employment action." Chapman, 229 F.3d at 1024. If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts and not the real reasons for the adverse employment action. Id.; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Id. However, the Supreme Court recently held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000).

4

Following Reeves, the Eleventh Circuit Court of Appeals held that "if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman, 229 F.3d at 1024-25.[2]

### 1. Job Qualifications

Defendant argues that Plaintiff was not qualified for the job of assistant superintendent due to performance problems occurring while he was performing the job of assistant superintendent. These performance problems included misplacement of anchor bolts, misplanting of trees, failure to correct problems, inability to use specialized equipment, and failure to keep deadlines. Affidavit of Eric Plotke [DE 28] ¶¶ 34-42. Plaintiff first argues in response that Plaintiff must have been qualified for the job or Defendant would not have hired him. Putting aside this "chicken or egg" debate (presumably every employer only hires persons who are qualified in the employer's mind at the time of hiring; such an interpretation of this part of the prima facie case would vitiate this prong in post-hiring disparate treatment cases), Plaintiff also presents evidence that Plaintiff did not experience performance problems. Some of this evidence is in the form of subordinate testimony or prior employer testimony that Plaintiff did perform his job well and had the skills Defendant asserts he lacked. More importantly, Plaintiff has put forth, through the testimony of the Plaintiff's boss, superintendent Eric Plotke, that Plotke had not made a written record of Plaintiff's alleged performance problems. Plotke Deposition, at p. 92 [DE 30].

Defendant argues in reply that subordinate or past-employer testimony is irrelevant to

---

[2] The Court notes that Chapman, an *en banc* opinion, abrogated Batey v. Stone, 24 F.3d 1330, 1336 (11th Cir. 1994), regarding the appropriateness of summary judgment for resolving employment discrimination claims. Batey is relied upon by Plaintiff in his opposition to the instant motion for summary judgment.

5

whether the employer viewed his performance as lacking. Without deciding this legal evidentiary issue regarding this type of evidence, the evidence submitted by Plaintiff regarding lack of formal warnings or reprimands by the employer, along with his own deposition testimony regarding his own view of his performance, leave the question of qualifications and performance as containing material issues of fact that are in dispute. Defendant's argument in reply that the evidence shows that Defendant did not write anyone up for failure to perform is relevant,[3] and arguably supports the testimony of Plotke that he did discuss performance problems with Plaintiff. However, the lack of contemporaneous documentary evidence of poor performance leaves the issue factually disputed. At the summary judgment stage, the Court must construe the facts and "any doubts in this regard should be resolved against the moving party." Adickes, 398 U.S. at 157. Thus, this Court concludes that material issues of disputed fact remain on the issue of whether Plaintiff was qualified for the job of assistant superintendent.

### 2. Similarly Situated Comparator

Defendant next argues that Plaintiff has not met his prima facie case because he was not similarly situated to Bender, the white and younger than 40 years of age employee to whom Plaintiff seeks comparison. Bender, a white male 29 years of age, was hired in February, 1998, as an assistant superintendent-union benefits, the same position as Plaintiff. Bender had been a union carpenter prior to this date. There is no dispute, that under the union wage scale, carpenters are paid more than laborers at every level. There is also no factual dispute in the record that all of Defendant's assistant superintendent-company benefits personnel were carpenters rather than laborers. Defendant argues that Plaintiff's true comparator was a Mr. Houghton, a younger white male, and former laborer by trade, who was terminated from the assistant superintendent-union benefits position prior to Plaintiff's promotion to that position.

---

[3] See Plotke Deposition at p. 108.

6

Defendant argues that Plaintiff was treated better than Houghton since Houghton was also a former laborer foreman who was terminated from the position that Plaintiff was able to hold. Plaintiff argues simply that since Plaintiff and Bender performed the same job, at the same location, at the same time, that they are similarly situated.

While Defendant makes a strong argument regarding Houghton as the comparator and not Bender, presumable Houghton received a review prior to his termination. In addition, there is no dispute that Plaintiff and Bender performed the same job, at the same time, at the same construction site, albeit on different buildings within that site. Moreover, despite Bender's carpenter background, Defendant has not presented any evidence, other than Plotke's disputed speculation regarding Plaintiff's view of Plaintiff's own performance, as to why Plaintiff never received a review while Bender not only received a review but a further raise in August, 1998. Taken the record as a whole, Plaintiff has at least created a material issue of disputed fact that Bender and Plaintiff are comparators and Bender was treated better for reasons other than simply having carpenter experience.

### 3. Legitimate, Non-discriminatory Reasons and Alleged Pretext

Defendant next argues that there were legitimate, non-discriminatory reasons for the different pay for Plaintiff and Bender, principally the difference in skill level between a laborer and a carpenter. Defendant has put forth undisputed evidence that carpenters are paid higher wages than laborers of equal or even greater experience. While this skill difference may explain the higher rate paid to Bender over Plaintiff at any given time, it does not explain why Plaintiff did not receive a performance review, while Bender did. While Defendant did present undisputed facts that an assistant superintendent-union benefits may take 1.5 years to get promoted (as in Plotke's case), that fact also does not explain the lack of a six-month review. Thus, on the issue of the six-month review, Defendant has not presented a legitimate, non-

discriminatory reason, and thus summary judgment cannot be granted.

Defendant also presents the issue of lacking performance by Plaintiff as a reason for Plaintiff not receiving a promotion or raise after six months in August, 1998. As mentioned above, that issue remains in factual dispute, and thus summary judgment cannot be granted on that issue. Moreover, this reason also does not explain the lack of a formal performance review. Presumably a company would benefit more by reviewing an employee whose performance it found lacking, in the expectation that such performance would improve, and because the company would not have to give that employee a raise at that time.

Defendant also argues separately that Plaintiff cannot show a discriminatory motive on behalf of Defendant because Plaintiff himself testified that he did not believe Plotke to be a racist.[4] See Deposition of James Bush, Volume I, pp. 145, 147 [DE 30]. However, Plaintiff's supervisor need not be a "racist" for race discrimination to have occurred in this case. To the extend Defendant has presented legitimate reasons for the disparate treatment, Plaintiff argues evidence of pretext by the Defendant's failure to ever discipline or counsel Plaintiff with any of the alleged performance problems discussed in the Plotke deposition and affidavit, by Defendant's attempt to convince Plaintiff at his final meeting when Plaintiff announced he was quitting that Plaintiff should stay and continue to work for Defendant,[5] and by other more

---

[4] Defendant also argues that Eleventh Circuit precedent states with regard to the ADEA claim, that since the same actor was involved in the decision to hire and not to promote Plaintiff, that this Court presume a lack of discriminatory motive. See Williams v. Vitro Services Corporation, 144 F.3d 1438, 1442-43 (11th Cir. 1998). However, the Williams court only concluded that the "same actor" factual circumstance gives rise to a "permissible inference" of non-discrimination and not a "mandatory inference." Thus, "while such evidence may help to convince a jury that the defendant's proffered legitimate reasons for its decision are worthy of belief; it is the province of the jury rather than the court, however, to determine whether the inference generated by the "same actor" evidence is strong enough to outweigh a plaintiff's evidence of pretext." Id. at 1443.

[5] Bush Deposition, p.132.

8

isolated incidents involving not being invited to the Christmas party, not being in the company photo for the job site he worked at, and not being admitted to the EEO meeting.[6]

Although it is true that Plaintiff bears the ultimate burden of showing a connection between his disparate treatment and his age or race, and the evidence of such connection in the record before this Court at this time is thin, the Court is convinced that Plaintiff has presented sufficient evidence of pretext to have this Court deny the instant motion.[7]

## C. Florida Unpaid Wages Claim

Defendant argues with regard to Plaintiff's claim for unpaid wages under Florida Statutes Section 448.08 that Florida law precludes such a claim in this case since Plaintiff is really seeking back wages due to disparate treatment discrimination, rather than a failure to pay wages. Defendant asks this Court to rely upon Munsey v. General Telephone Company of Florida, 538 So.2d 1328, 1331-1333 (Fla. 2nd DCA 1989), which overturned an attorney's fee award to a

---

[6] Plaintiff makes other allegations about the hiring practices of Defendant regarding African-Americans. The Court is reluctant to rely on this evidence at this time, as it is not clear that this evidence is admissible to show discrimination in the particular case of the Plaintiff.

[7] The Court notes that neither party briefed the issue of whether an adverse action occurred in this case. Apparently, the parties assumed that the disparate pay would qualify as an adverse action to satisfy that prong of Plaintiff's prima facie case. In the Court's analysis, the significance of the lack of a six-month review raises the question of whether such a failure to review is an adverse action. The Court concludes that failure to review, when raises and promotions are linked to such reviews, is equivalent to deprivation of employment opportunities, and thus constitutes an adverse action for purposes of the prima facie case.

The law regarding adverse actions stems from Title VII retaliation cases, but there is no reason not to import that analysis into this race and age discrimination case. In Wideman v. Wal-Mart Stores, 141 F.3d 1453 (11th Cir. 1998), the Eleventh Circuit held for the first time that Title VII's protection extends to adverse actions which fall short of ultimate employment decisions. Id. at 1456. "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citations omitted). The Gupta decision used the standard that an adverse action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta, 212 F.3d at 587 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir.1997)).

9

defendant under Section 448.08 because the Plaintiff had sued under the Florida sex discrimination statute. This holding is distinguishable on its facts, as in this case, Plaintiff is suing under the unpaid wages provision of Section 448.08. Defendant has not presented any caselaw that states a plaintiff cannot maintain a lawsuit under both theories, or that a plaintiff's remedies are limited in such a case (other than an obvious bar on double recovery). In this case, however, the Complaint makes clear at paragraph 10 that Plaintiff alleges that he was told he was promoted as of fall, 1997 (the Plaintiff's factual recitation states October, 1997), but that he did not receive a raise commensurate with that new position until March, 1998. After March, 1998, it is clear that Plaintiff is really complaining about disparate treatment. Therefore, the Court will grant the Defendant's motion in part as to complaints about unpaid wages after March, 1998, without prejudice to arguments that Plaintiff did not receive a raise or review due to disparate treatment. However, for the period from Plaintiff's alleged promotion in 1997 through his actual raise in March, 1998, there are disputed issues of fact that preclude summary judgment, and Defendant has not presented controlling legal authority to preclude such a claim under Florida law for unpaid wages.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 27] is hereby **GRANTED in part** only as to Count V, regarding unpaid wages, and only for the time period after Plaintiff's raise in March, 1998. The motion is **DENIED** in all other respects;

2. The deadline for motions in limine is hereby *sua sponte* extended by this Court to allow for motions consistent with this opinion. Such motions must be filed by January 19, 2001;

3. Responses to the motions in limine shall be due January 29, 2001;

4. Proposed jury instructions shall also be due January 29, 2001.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of January, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

David Pollack, Esq.
The Ingraham Building
25 SE 2nd Avenue, Suite 1020
Miami, FL 33131

Sheila Cesarano, Esq.
Rene Gonzalez-Llorens, Esq.
Shutts & Bowen LLP
1500 Miami Center
201 S. Biscayne Blvd.
Miami, FL 33131

11