

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6224-CIV-DIMITROULEAS/JOHNSON

JAMES BUSH,

        Plaintiff,             **THIS IS A MAGISTRATE CONSENT CASE**

v.

THE WHITING-TURNER
CONTRACTING CO., a
Maryland corporation,

        Defendant.
_____/

## DEFENDANT'S MOTION TO BIFURCATE TRIAL AND INCORPORATED MEMORANDUM OF LAW

Defendant, **WHITING-TURNER CONTRACTING, CO.,** ("Whiting-Turner"), pursuant to Fed. R. Civ. P. 42(b), moves the Court to bifurcate at trial the issues of liability and damages. In support, Whiting-Turner states as follows:

1. Plaintiff filed the instant lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, § 760.01, *et seq.* Fla. Stat. (the "FCRA"), and § 448.08, *Fla. Stat.* ("Section 1981"). Specifically, Plaintiff claims that Whiting-Turner discriminated against him because of his race.

2. The Court should order separate trials as to liability and damages because bifurcation will simplify and clarify the proceedings, permit a more orderly disposition of the case, and better serve the interests of justice.



3.  In support, Whiting-Turner attaches as Exhibit "A" an article authored by circuit court judge David L. Tobin on the benefits of bifurcating cases. Judge Tobin has tracked the settlement and efficient resolution of cases and has statistically analyzed the benefits of bifurcation.

## MEMORANDUM OF LAW

### I.  THE COURT SHOULD ORDER SEPARATE TRIALS AS TO LIABILITY AND DAMAGES BECAUSE IT CONTRIBUTES TO EXPEDITIOUS ADJUDICATION, SIMPLIFIES THE PROCEEDINGS, AVOIDS JURY CONFUSION, AND AVOIDS UNFAIR PREJUDICE.

Rule 42(b) states in relevant part:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim.
. . .

Fed. R. Civ. P. 42(b). Pursuant to Rule 42(b), the Court may order separate trials on the grounds of convenience or to avoid prejudice to a party. Id. The Court may also consider whether separate trials will contribute to the expeditious and economical adjudication of the cause, as well as avoid confusion to the jury and avoid inconsistent jury verdicts. See Authors' Comments to Fla. R. Civ. P. 1.270 (substantial equivalent to Rule 42(b)).

The Court has broad discretion in the interest of effective judicial administration to order separate trials pursuant to Rule 42(b). These factors were succinctly reported in Larsen v. Powell, 16 F.R.D. 322, 323 (D. Colo. 1954) (granting separate trials under Fed. R. Civ. P. 42(b)). The Larson court stated:

These [factors] include convenience or economy of time relating to the parties or their witnesses; the convenience and economy of the Court; the possibility that by a determination of one issue the trial of the other issues would be avoided; the degree of repetition that might be involved in determining the issues separately or whether the issues most conveniently could be determined together; whether both issues could be determinable by a jury or whether one could be a matter solely within the cognizance of the Court; and, finally, whether the trying of the issues together would

> necessarily work prejudice against one or the other of the parties, which would not
> be avoided by proper instructions.

Id. at 323. In the instant case, the introduction of evidence as to the amount of damages and expert testimony should be separated from liability for four reasons.

***First,*** separate trials contribute to the expeditious and economical adjudication of the cause. A determination of liability will take less time if damages are not considered. Determining damages will require the testimony of several fact and expert witnesses. Moreover, a determination that Whiting-Turner did not discriminate against Plaintiff will be dispositive of this entire case and avoid needless waste of time on damage witnesses and experts. We estimate that bifurcating the expert testimony and witness testimony on damages will save nearly two (2) trial days and several hours of jury deliberation.

***Second,*** separate trials simplify and clarify the proceedings, permit a more orderly disposition of the case, and avoid jury confusion. Separate trials will simplify the issues for deliberation because the jury will be better able to concentrate on liability. In addition, the evidence that the jurors will consider in each separate trial will only be relevant to the issue being tried (liability or damages) and the juror's determination will not be clouded by needless presentation simply intended to incite emotions. Bifurcation eliminates the potential for confusion and the use of evidence for improper purposes.

***Third,*** damages testimony will unfairly prejudice Whiting-Turner in that Plaintiff's testimony will be presented to improperly incite jury sentiment. In Helminski v. Ayerst Laboratories, 766 F.2d 208, 212 (6th Cir. 1985) (affirming district court's order granting separate trials), cert. denied, 474 U.S. 981 (1985), the Sixth Circuit considered the district court's order for separate trials on the issues of liability and damages in a products liability case and held:

> A trial court may exercise its discretion to order separate trials on the issues of liability and damages in order to reduce the possibility that the jury will be prejudiced. (Citations omitted). Bifurcation of proceedings into separate trials concerning liability and damages is appropriate when "the evidence pertinent to the two issues is wholly unrelated" and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination.

Id. at 212. The Sixth Circuit concluded that the issues were "separable" and affirmed the district court's decision to separate the trials. Id. If this matter is not bifurcated, testimony concerning Plaintiff's damages might elicit undue sympathy and thus prejudice a fair determination of liability.

## CONCLUSION

Defendant, WHITING-TURNER CONTRACTING, CO., respectfully requests that the Court bifurcate at trial the issues of liability and damage, and for such other relief as the Court deems proper and necessary.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 347-7386 (facsimile)

By: _____

Sheila M. Cesarano
Florida Bar Number 708364
Rene J. Gonzalez-LLorens
Florida Bar Number 0053790

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed and faxed on this __25th__ day of July 2001 to **DAVID H. POLLACK, ESQ.**, 25 S.E. 2nd Avenue, Suite 1020, The Ingraham Building, Miami, Florida 33131.

OF COUNSEL

MIADOCS 443681.1 M\V

**EXHIBIT "A"**

# To B. . . or Not to B. . .
## "B. . ." Means Bifurcation

by Judge David L. Tobin

From 1997 through May 2000, as judge in the 11th Circuit Court, I have bifurcated hundreds of cases in which the issues of liability and damages were involved. The most surprising statistic is that during this three and one-half years I have tried only one case in which the issue was damages! Do I have your attention?

Sometime in 1997, I was discussing calendar control and judicial efficiency with one of my colleagues, Judge Amy Donner, who said that she was bifurcating most of her cases. After our conversation, I examined the trials in my division for the year 1995 and found that of the 40 jury trials, eight of them were slip-and-fall cases. Of these eight, seven resulted in a verdict for the defendant. It occurred to me that if we tried only liability, between seven and 14 days of jury time would have been saved, enabling us to try several more cases. Accordingly, I then decided to screen our cases and began bifurcating slip-and-fall cases only. I hope that this article will assist judges and attorneys in selecting those cases in which bifurcation would benefit litigants and attorneys, as well as the court.

### Definition

For the purpose of this article, bifurcation means dividing a case into two separate trials: one in which a jury determines liability, and a second trial in which a jury determines damages. The jury will also determine percentage of liability as well as comparative negligence, if any. Bifurcation of civil cases is not to be confused with severing a case when the case against one defendant is tried separately from that of another defendant.

### Cases Not to be Bifurcated

First, let me put aside the issues of bifurcation in family matter cases. We are not dealing with bifurcation of dissolution proceedings, which are only done under exceptional circumstances. Bifurcation in dissolution matters is fraught with numerous perils which are amply set forth in *Williams v. Williams*, 659 So. 2d 1306 (Fla. 4th DCA 1995). Well then, to what kind of cases am I referring? This article will address slip-and-fall cases, products liability cases, automobile accidents, and general negligence matters where two issues exist, *i.e.*, the issues of liability of the defendant to the plaintiff, and the plaintiff's damages caused by such negligence.

### Authority for Bifurcation

Case law dating back to 1967 in *Watts v. Mantooth*, 196 So. 2d 230 (Fla. 2d DCA), makes clear that the trial court has the discretion to bifurcate a case so long as discretion is not abused. In the *Mantooth* case, the court said, "In passing, we note that on many occasions a new trial is granted, on the issue of damages only, in which instance, of course, a separate jury determines the amount of damages, if any, to be awarded." The *Mantooth* case was quoted by the Third DCA in 1980 in the case of *Hernandez v. Leiva*, 391 So. 2d 292, in which the court said that it was within the discretion of the trial court, on its own initiative, to bifurcate and continue the trial as to damages and attorneys' fees.

In *Microclimate Sales Company v. Doherty*, 731 So. 2d 856 (Fla. 5th DCA 1999), the court stated that bifurcation was generally proper absent a specific threat of inconsistent verdicts or prejudice to a party. The court cited R. Civ. P. 1.270 (b), which gives the court authority for bifurcation and says that such action would not be reversed absent an abuse of discretion. The court further said that the trial court exercised its discretion, and ordered the matter bifurcated in the interest of convenience and judicial economy.

Judicial economy does not mean saving the court



money, but does in fact indicate an ability of the court to more efficiently move cases through the system from the filing of a lawsuit until the day of trial. If only the issue of liability is tried to verdict, there may be no trial for damages. Reasons for this outcome could be settlement of the case after the determination of liability or a finding of no liability on the part of the defendant by the jury.

### Advantages of Bifurcating Liability Cases

With the average automobile liability case or slip-and-fall case, the advantages of bifurcation are as follows:

1) The trial on liability is shorter than a trial on liability and damages.

2) If a jury decides there is no liability, the issues between the parties are concluded.

3) If a jury decides there is liability, this issue is concluded.

4) If a jury finds in favor of a defendant on liability, that issue is appealable to a court of appeal and, if reversed, will send the message to the litigants which ordinarily results in settlement.

5) Without the issue of damages being tried in the first case, the litigants and court will be spared the numerous pretrial motions relating to treating physicians, medical records, expert opinions, fees for costs of depositions, and other matters which always arise from the preparation for the damage issue. The trial on liability is greatly simplified.

6) If a case has gone to mediation and has not settled, it is generally because the issue of liability is contested. If liability is determined by a jury, the jury will also apportion responsibility to the plaintiff, the defendant, and any *Fabre* nonparty, such as a phantom vehicle defendant on the verdict form. This procedure will enable the parties to reevaluate the case based upon the jury verdict.

7) Bifurcating selected cases on a careful basis will allow the court to try more cases in a given period of

> To screen cases to determine whether bifurcation would be advantageous, there must be a time when the judge can capture the file, make the analysis, and issue the order of bifurcation.

time, and thus accommodate more litigants' quest for justice in the system and reduction of the time to move a case to trial.

8) By eliminating the damage issues, the parties will be ready for trial sooner and can be placed on an earlier trial calendar.

9) A trial on the liability issue alone is simpler in preparation, less costly, and easier to try. All damage issues, expert depositions, and costs of proving damage issues are held in abeyance.

### Disadvantages of Bifurcation

1) No litigant (and no judge) wants to try a case twice. Should a jury decide liability on the part of the defendant in any proportion, the damage case will naturally follow and, generally speaking, a second jury will have to be selected to try the damage case.

2) By removing the damage issues from the case, the plaintiffs will be unable to present a sympathetic view of the client's case. The court should instruct the jury that the plaintiff has injuries, and in some cases it would be appropriate for the court to state that the plaintiff has either serious or significant injuries.

3) The second jury for damages will take time to select. Although one of my colleagues calls the first

jury back to try the damage issues, I believe that a second jury should be selected at a future date for several reasons:

• If the first jury is told that it may have to return to decide damages, this of itself is prejudicial to the plaintiff because the natural tendency of the jury will be to do that which does not require them to return.

• The parties should have additional time to conduct discovery on damages, and this may take several months. Thus, a jury having heard a liability case may have to come back two to six months later, which would give the jury too much time to be exposed to discussions with family members or friends concerning a future decision.

• Locating the same jurors is disruptive. If any have moved away, died, or become incapacitated, it might be an impossible job to reassemble the same group of jurors.

• Jurors called back may resent returning and complain of not being told of this responsibility in the first instance. The court's relations with the public could suffer.

If liability is highly questionable, but damages are great, plaintiff's counsel will object vociferously.

### Timing of the Order to Bifurcate

To screen cases to determine whether bifurcation would be advantageous, there must be a time when the judge can capture the file, make the analysis, and issue the order of bifurcation. It is not practical to have files sent to the judge's office the minute a lawsuit is filed. As we know, most cases are settled before trial. There are various other times that the case will be brought before the court when bifurcation can be analyzed.

The first time a case usually appears is on motion calendar for pretrial motion problems. If the pretrial motion on the case is related to medical records, medical reports, appointment of expert witnesses in the medical or related fields, you can determine what type of case it is. In many cases, the medical issues and

damage issues will appear on the motion calendar and can be disposed of by bifurcating the case if the other points of the analysis are positive. For example, if a motion comes in concerning difficulty in having the plaintiff examined by defense counsel's doctor, and you note that the case is a slip and fall case, that would be the ideal time to determine whether bifurcation on the case is indicated. In many slip and fall cases not only will the medical issues and damage issues be put on the "back burner," but also there will be time saved on motions for damage issue problems and expert witness problems. The money saved can better be used for settlement purposes.

The second time a case may cross the court's desk is on a motion for trial setting. I require attorneys to appear on motion calendar to set a trial and to bring a joint pretrial catalog with them. This is a good time to determine if bifurcation is advantageous.

While there are no set procedures to capture cases for the eyes of the court to determine whether bifurcation is advisable, each judge can examine his or her own procedures and determine what the capture point is which would be most advantageous for the purpose of making the bifurcation analysis.

An order of bifurcation can also result from any party filing a "motion to bifurcate." This will trigger a hearing during which the analysis by counsel and the court can be made.

There may be unique situations when a case is ready for trial and the court only has a few days to try the case. If liability is the main issue in a case, the case could be bifurcated at that time in order to accommodate the court's calendar and dispose of the primary issue. For example, I have the use of my courtroom for two weeks out of four. On a Wednesday or Thursday just before the end of the second week, I may have a three- or four-day case left. If bifurcated, I can finish the case in two days and not only utilize my court time but eliminate the need for setting the entire trial over to a future date. In the few cases in which I followed this procedure, the case has never returned for the damage issue to be tried.

### Multiple Defendants

There are many cases with multiple defendants. Medical malpractice cases often have hospitals and doctors named as defendants. Often, the case will not settle because each of the defendants believes that the primary liability rests with the other defendant or defendants. A bifurcated case will enable the jury to apportion liability among the various defendants. In those cases, some of the defendants may be released with a finding of no liability and other defendants may be assessed full or partial liability. Admittedly, in these cases the causal relation issue will have to be determined by the jury and bifurcation may not save a lot of time. In such cases, doctors, who may have testified in the liability and causation case, may have to come back to testify in the damage case. Nevertheless, an analysis of each case and candid discussion with all attorneys involved may help. In such cases, the court must be open minded and listen to all sides.

In other cases with multiple defendants, if the issues of apportionment and comparative negligence are established by a jury, our experience is that the damage issues are always settled thereafter.

### Statistical Data

On the motion of the plaintiff's counsel, or defense counsel, or on my own motion, I have granted motions to bifurcate on other cases which will be on future calendars. At this point, I believe we have the first significant figures to pass on to the reader resulting from this experiment in bifurcation.

Although I do not have accurate records in total since 1997 as to the number of cases bifurcated, I do have some accurate statistical data on those cases which were bifurcated, which did not settle before getting set for trial, and which were actually set for trial as well as those cases which went to verdict.

Since 1997, there were 42 cases on my trial calendar which were bifurcated. In 1997, there were three plaintiff's verdicts. In 1998, there were two plaintiff's verdicts which apportioned liability, one being 50-50, and the other being 60-40. In 1999, of the 10 bifurcated cases on the trial calendar, there were three defense verdicts and three plaintiff's verdicts apportioning liability. The remaining cases were settled before trial.

Most significantly, and the wake-up call for me as a circuit judge and the incentive for this article, is that in the last three and one-half years of bifurcating cases I have tried a total of one (not a misprint) damage case.

Is there a reason why after setting trials for 42 cases I have only tried one case for damages? Admittedly, several other cases on which the plaintiff will prevail in some percentage may come up on my future trial calendars.

### January through May 2000

|       | # of Cases | # Bifurcated | # Nonbifurcated Settled | # Bifurcated Settled |
|-------|-----------:|-------------:|------------------------:|---------------------:|
| Jan.  | 36         | 5            | 18                      | 4                    |
| Feb.  | 29         | 4            | 12                      | 4                    |
| March | 13         | 6            | 7                       | 5                    |
| April | 12         | 7            | 5                       | 4                    |
| May   | _23_       | _5_          | _12_                    | _4_                  |
|       | 113        | 27           | 54 (47%)                | 21 (77%)             |

I attribute this rather astonishing statistic to the following:

1) By trying the case on liability only, the litigants are saving substantial expense for court reporters, expert witness fees, deposition fees charged by medical providers and others, as well as the time devoted to damage discovery issues taken by defendants' attorneys who usually work on an hourly rate. When the parties get to mediation, oftentimes these costs have put the parties in a position of "no return" so that the case cannot be settled. By handling only liability issues, substantial costs have been saved to be used for settlement.

2) At mediation in many negligence cases, particularly slip-and-fall cases, the defendant makes no offers of settlement because the primary issue is negligence. If a jury decides the defendant is negligent to any degree, settlement is facilitated.

3) In some cases, the issue of damages is actually a nonissue. If someone trips and falls in the supermarket and fractures a hip, the hip fracture is not really the issue. If a jury decides that the supermarket is negligent, then the only issues for a jury are causation and damages. In this scenario, even causation disappears and the issue is the value of a broken hip. This case will settle because there is really only the matter of evaluating the broken hip for that particular plaintiff, and good lawyers can resolve that issue with a good mediator.

### Mediation of a Bifurcated Case

When a case has been bifurcated, I give the attorneys a list of procedures which includes the requirement that plaintiff provide defense with all medical bills and all medical reports so that mediation can be meaningful. I stay the discovery procedures on damages by eliminating all depositions of doctors and have counsel proceed strictly upon the medical reports and medical bills. This saves thousands, perhaps even tens of thousands, of dollars on each side for professional fees which can better be used toward a settlement.

### To Bifurcate or Not to Bifurcate

No hard and fast rules exist as to when bifurcation of a case will benefit both parties. Out of some 30,000 civil cases filed in Miami-Dade County in 1999, approximately 6,500 of them were in the category of cases in which the issues were liability and unliquidated damage. Each case has to be analyzed individually, and the court must be open minded and listen to both sides and decide whether there are valid objections or reasons not to bifurcate. If bifurcation will not result in economies of time and costs for the parties and the court, then obviously it need not be employed. However, an analysis of each case with the thought of what can be accomplished by bifurcation by the parties and the judge can be beneficial to the entire system. It will enable the attorneys to move their cases through the courts more quickly, and to try more cases in a given period of time. As judicial resources become more precious, each and every new system or procedure should be carefully analyzed as to the ultimate benefits to the public as well as the bar.

As an anecdote, one lawyer approached me after a slip-and-fall case had resulted in a defense verdict and thanked me for bifurcating the case. He said that he had taken the case because it was a relative. By bifurcating, he saved thousands of dollars in expert witness fees which he never would have recovered from his client. Clearly, if he persuaded the jury to attribute any liability to the defendant, the case surely would have settled before any damage trial.

### Conclusion

The Florida Supreme Court this year certified the need for 43 new circuit court judges statewide. The legislature, in the latest budget, has provided for no new judges.

Bifurcated cases settled at almost twice the percentage of non-bifurcated cases. Bifurcation of cases into its components of liability and damages can be an effective method of more efficiently processing cases through the judicial system. With a spirit of cooperation between the bench and the bar, only those cases truly suited should be processed through bifurcation, which is not a punishment to plaintiffs, nor a "second bite at the apple" for the defendants. The three-year experience of this writer shows bifurcation to be an effective method of assisting parties in settling cases. Bifurcated cases settled at almost twice the percentage of nonbifurcated cases. This indicates that the process does not in any way impede fair settlement of pending litigation.

If bifurcation is used on an experimental basis, I would suggest selecting it on more than one or two cases. If those particular cases end up with a second trial for damages, trial time will not be gained. My belief is that bifurcation must be used on a larger number of cases in order to make it work. The average jury trial results in half of the verdicts being for plaintiffs and half for defendants. Generally speaking, if the cases are carefully selected, the bifurcated cases will in all probability resolve in defendant's favor in a somewhat larger percentage. In order to determine if bifurcation works, there must be several dozen cases selected to obtain significant data to justify any judicial economy.

The procedure form which Judge Tobin uses or any additional information may be requested by writing Judge David L. Tobin, 11th Judicial Circuit, 73 West Flagler St., Room 303, Miami, Florida 33130. ❑

---

*Judge David L. Tobin is an 11th Judicial Circuit Court judge in the civil division and has been presiding judge in over 400 jury trials. He received his B.S. in 1949 from the University of Miami and his J.D. from that university in 1961. Judge Tobin has been chair of the 11th Circuit Victim's Rights Committee and member of the Dade County Bar Association Grievance Committee and Fee Dispute Committee. Before coming to the bench in 1987, he was in private practice.*